ILC CORPORATION, Plaintiff,

v.

LATINO NEWSPAPER, INC., et al, Defendants.

Civ. A. No. 90–0013 (CRR).

United States District Court, District of Columbia.

Oct. 10, 1990.

Ernesto Santiago Clarke, Washington, D.C., for plaintiff ILC Corp.

Nancy E. Lasater and Danny M. Howell of Golden, Freda & Schraub, Washington, D.C., for defendant Latino Newspaper Inc.

David L. Schneier, Bethesda, Md., for defendant Jose L. Sueiro.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

After holding a status call in the above-captioned case and carefully considering the parties' written and oral arguments, the Court granted the defendants' motion and dismissed all of the federal claims (alleging various antitrust and RICO violations) in the plaintiff's Amended Complaint. *See* June 27, 1990 Order. This dismissal left only non-federal claims remaining in this case, namely allegations of civil conspiracy (Count II), trade libel (Count IV), and tortious interference with contractual relations (Count V). In addition, the Court *sua sponte* directed the parties to brief the question of whether, in light of this dismissal, the Court has jurisdiction over these remaining non-federal claims.

Although the plaintiff argues that this Court has diversity jurisdiction over these remaining claims, the Court disagrees. It is true that the plaintiff's Amended Complaint relies in part upon the diversity jurisdiction statute, 28 U.S.C. § 1332, and that there seems to be complete diversity between the plaintiff (a Maryland resident) and the defendants (D.C. residents). However, in this case the plaintiff has failed to satisfy the other prerequisite for diversity jurisdiction, that the amount in controversy exceeds $50,000.

To determine whether a case satisfies the amount in controversy requirement and whether to exercise diversity jurisdiction, courts examine the complaint, which "is defective unless it contains a proper allegation as to the amount in controversy." 1 *Moore's Federal Practice* ¶ 0.92[1], at 859–60. Here, the plaintiff's Amended Complaint is defective because it does not

even plead any amount whatsoever for the non-federal claims. Although the Amended Complaint—which has a separate *ad damnum* clause for each count—demands judgment in amounts certain on the (now-dismissed) federal claims, it seeks "[d]amages in an amount which may be proved at trial" for the civil conspiracy count and "[c]ompensatory and punitive damages in an amount presently undetermined" for the trade libel and tortious interference counts. *See* Amended Complaint at 20.[1] Nor is the plaintiff's July 6, 1990 Opposition any more specific about its alleged damages.

■ The Court recognizes that dismissal for failure to meet the jurisdictional amount is rare, but if the Court were to exercise diversity jurisdiction in this case it would reduce to a meaningless gesture Congress' recent amendment of the minimum jurisdictional amount from $10,000 to $50,000. While the remaining non-federal claims may be appropriate for consideration by a court of general jurisdiction, the pleadings do not satisfy the plaintiff's burden of proving that these claims fall within this Court's limited diversity jurisdiction. 1 *Moore's Federal Practice* ¶ 0.92[3.–1], at 868 (plaintiff has burden of proof in satisfying amount in controversy requirement). In short, because the plaintiff has neither pleaded that the amount in controversy exceeds $50,000 nor sought leave to amend, the Court will dismiss the remaining non-federal claims for lack of subject matter jurisdiction.[2]

■■ However, even if diversity jurisdiction existed here, the plaintiff's apparent failure to comply with the legal requirements necessary to qualify as a foreign corporation doing business in D.C. provides an alternative basis for dismissing the remaining non-federal claims. D.C. has a so-called "door-closing statute" that prevents foreign corporations—such as the plaintiff, a Delaware corporation—from bringing an action in a D.C. court unless it has obtained a certificate of authority. *See* D.C.Code Ann. § 29–399.20(a). Moreover, this statute applies with equal force to this Court sitting in diversity. *See Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (affirming Mississippi federal district court's dismissal, in reliance upon Mississippi door-closing statute, of lawsuit brought by Tennessee corporation that had not qualified to do business in Mississippi); *accord Moore v. Northern Homes of Pa., Inc.,* 80 F.R.D. 278, 281 (W.D.Va.1978) (relying upon *Woods* in applying Virginia door-closing statute). Thus, the plaintiff may pursue its non-federal claims in this Court only if it has qualified to do business in D.C. as a foreign corporation in accordance with the D.C.Code.

The defendant Jose Sueiro represents that his attorney contacted the Corporations Division of the D.C. Department of Consumer and Regulatory Affairs and that there was no record of the plaintiff ever qualifying to do business in D.C. as a foreign corporation. *See* June 29, 1990 Supplement to Defendant Jose Sueiro's Motion to Dismiss at 5. Significantly, in its opposition the plaintiff does not dispute that it

---

**1.** Even assuming *arguendo* that the Court could properly exercise subject matter jurisdiction in this case, it would have to dismiss the civil conspiracy count for failure to state a claim upon which relief may be granted. As the defendants correctly point out, D.C. law does not recognize "civil conspiracy" as an independent tort. *See Halberstam v. Welch,* 705 F.2d 472, 479 (D.C.Cir.1983) (citing *Waldon v. Covington,* 415 A.2d 1070, 1074 n. 14 (D.C.1980)).

**2.** In this case the plaintiff—although specifically aware of this issue—has never placed a dollar amount on the damages that it allegedly suffered on its non-federal claims. Therefore, the Court does not utilize the "legal certainty" test which applies to those cases in which the defendant challenges the *size* of the amount in controversy pleaded in the complaint. *See, e.g., Wig-*

gins v. North Am. Equitable Life Assurance Co., 644 F.2d 1014, 1017 (4th Cir.1981) (dismissing case for lack of diversity jurisdiction because "as a matter of 'legal certainty'" amount in controversy was under $10,000 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938))); *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 532 (D.D.C.1981) (applying *Red Cab Co.* and exercising diversity jurisdiction because "[o]n the face of the pleadings it cannot be said with a legal certainty that the plaintiff cannot recover more than ten thousand dollars"). Of course, it is possible that the plaintiff's decision not to seek leave to amend is a tacit concession that it cannot, in good faith and in accordance with Fed.R.Civ.P. 11, plead over $50,000 in damages on its non-federal claims.

88

has not qualified to do business in D.C. as a foreign corporation nor does the plaintiff argue that the Court should delay ruling to give it time to comply with the D.C.Code requirements for foreign corporations doing business in D.C. *Compare Moore*, 80 F.R.D. at 281–82 (giving defendant foreign corporation thirty days to comply with Virginia law and obtain certificate of authority before deciding whether to apply Virginia door-closing statute to dismiss defendant's counterclaim). Thus, since the plaintiff has not produced a certificate of authority and has not even argued that it is permitted, under D.C.Code Ann. § 29–399.20(a), to bring a lawsuit in D.C. as a foreign corporation, the Court would have to dismiss the remaining non-federal claims even if it did have subject-matter jurisdiction over them.

Accordingly, it is, by the Court, this 9th day of October, 1990,

ORDERED that the defendants' motions to dismiss the remaining non-federal claims shall be, and hereby are, GRANTED; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the Court's docket.