866 F.Supp. 406 (1994)
In Re POTASH ANTITRUST LITIGATION.
NEVE BROTHERS, et al., Plaintiffs,
v.
POTASH CORPORATION OF SASKATCHEWAN, et al., Defendants.
Angela COLEMAN, et al., Plaintiffs,
v.
NEW MEXICO POTASH, INC., et al., Defendants.
Civ. Nos. 3-93-197, 3-94-649 and 3-93-684, MDL No. 981.
United States District Court, D. Minnesota, Third Division.
August 22, 1994.
*407 Joseph M. Alioto, Alioto Law Office, San Francisco, CA, Guido Saveri, Richard Saveri, Saveri & Saveri, San Francisco, CA, Marc M. Seltzer, Corinblit & Seltzer, Los Angeles, CA, Joseph R. Saveri, Lieff Cabraser & Heimann, San Francisco, CA, Lawrence G. Papale, Cannata & Papale, San Francisco, CA, James Belford Brown, Freeman Brown Hartmann Sperry & D'Aiuto, Stockton, CA, Daniel J. Mogin, Mogin & Kendrick, San Diego, CA, Sherman Kassof, Kassof Law Office, San Francisco, CA, for Neve Bros., Neve Roses, Inc.
Joseph M. Alioto, Alioto Law Office, San Francisco, CA, Guido Saveri, Saveri & Saveri, San Francisco, CA, Marc M. Seltzer, Corinblit & Seltzer, Los Angeles, CA, Francis O. Scarpulla, Scarpulla Law Office, San Francisco, CA, Joseph R. Saveri, Lieff Cabraser & Heimann, San Francisco, CA, Lawrence G. Papale, Cannata & Papale, San Francisco, CA, James Belford Brown, Freeman Brown Hartmann Sperry & D'Aiuto, Stockton, CA, Daniel J. Mogin, Mogin & Kendrick, San Diego, CA, Sherman Kassof, Kassof Law Office, San Francisco, CA, for J.P.M. Ranches, Inc.
Michael Evan Jaffe, Eugene J. Meigher, James P. Mercurio, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Andra Greene, Irell & Manella, Newport Beach, CA, Lawson A.W. Hunter, Stikeman Elliott, Toronto, Canada, for Potash Corp. of Saskatchewan, Inc., Potash Corp. of Saskatchewan Sales, Ltd., P.C.S. Sales (Iowa) Inc., P.C.S. Sales (Indiana), Inc.
Victor S. Friedman, Fried Frank Harris Shriver & Jacobson, New York City, Stephen D. Alexander, Fried Frank Harris Shriver & Jacobson, Los Angeles, CA, for Rio Algom, Ltd., Potash Co. of America, Inc.
Ronald S. Katz, Gary Benton, Coudert Bros., San Francisco, CA, for Kalium Chemicals, Ltd., Kalium Canada, Ltd.
David C. Gustman, Freeborn & Peters, Chicago, IL, Ron R. Goldie, Jeffer Mangels Butler & Marmaro, Los Angeles, CA, for Noranda, Inc., Noranda Minerals Inc., Noranda Sales Corp., Ltd., Noranda Sales, Inc., Central Canada Potash Ltd.
Richard J. Favretto, Marc Gary, Kerry Lynn Edwards, Lawrence S. Robbins, Mayer Brown & Platt, Washington, DC, William J. Reifman, Mayer Brown & Platt, San Francisco, CA, Gordon Gene Busdicker, John Dwyer French, Faegre & Benson, Minneapolis, MN, Richard J. Favretto, Marc Gary, Kerry Lynn Edwards, Lawrence S. Robbins, Mayer Brown & Platt, Washington, DC, for I.M.C. Fertilizer Group, Inc.
Gerald A. Connell, John M. Taladay, Lee H. Simowitz, Baker & Hostetler, Washington, DC, Ralph Zarefsky, Baker & Hostetler, Los Angeles, CA, Leon R. Goodrich, Oppenheimer Wolff & Donnelly, St. Paul, MN, for Cominco, Ltd., Cominco American Inc.
Stephen A. Marshall, Rubin Baum Levin Constant & Friedman, New York City, Robert Shelley Draper, O'Melveny & Myers, Los Angeles, CA, for Trans-Resources Inc., Nine West Corp., Cedar Chemical Corp., New Mexico Potash Corp., Eddy Potash, Inc.
*408 Patrick J. Grannan, Chimicles Burt Jacobsen & McNew, Los Angeles, CA, C. Oliver Burt, III, Mark C. Rifkin, Chimicles Burt Jacobsen & McNew, Haverford, PA, Marguerite R. Goodman, Goodman Law Office, Wynnewood, PA, Eugene Mikolajczyk, Kevin M. Prongay, Prongay & Mikolajczyk, Pacific Palisades, CA, for Angela Coleman.
John D. Levine, Dorsey & Whitney, Minneapolis, MN, Stephen A. Marshall, Martin P. Michael, Rubin Baum Levin Constant & Friedman, New York City, Robert Shelley Draper, O'Melveny & Myers, Los Angeles, CA, for New Mexico Potash Corp., Eddy Potash, Inc.
John D. Levine, Dorsey & Whitney, Minneapolis, MN, Wayne A. Cross, Dewey Ballantine, New York City, for Mississippi Chemical Corp.
Jerome B. Pederson, Fredrikson & Byron, Minneapolis, MN, Gerald Zingone, Arent Fox Kintner Plotkin & Kahn, Washington, DC, George S. Cary, Irell & Manella, Newport Beach, CA, for Potash Corp. of Saskatchewan, Inc., Potash Corp. of Saskatchewan Sales, Ltd.
Leon R. Goodrich, Oppenheimer Wolff & Donnelly, St. Paul, MN, Douglas E. Rosenthal, Susan M. Muchmore, Coudert Brothers, Washington, DC, for Kalium Chemicals Ltd., Kalium Canada, Ltd.
Leon R. Goodrich, Oppenheimer Wolff & Donnelly, St. Paul, MN, David C. Gustman, Freeborn & Peters, Chicago, IL, for Noranda, Inc., Noranda Minerals Inc., Noranda Sales Corp., Ltd., Central Canada Potash Co., Inc.
Gordon Gene Busdicker, John Dwyer French, Faegre & Benson, Minneapolis, MN, Richard J. Favretto, Marc Gary, Kerry Lynn Edwards, Lawrence S. Robbins, Mayer Brown & Platt, Washington, DC, for Fertilizer Group, Inc.
Leon R. Goodrich, Oppenheimer Wolff & Donnelly, St. Paul, MN, Eric H. Queen, Fried Frank Harris Shriver & Jacobson, New York City, for Potash Co. of America, Inc.
Mark Reinhardt, Reinhardt & Anderson, St. Paul, MN, Orrin S. Estebo, Estebo Schnobrich Frank & Solie, Redwood Falls, MN, Warren Rubin, Gross Sklar & Metzger, Philadelphia, PA, Michael J. Freed, Much Shelist Freed Denenberg Ament & Eiger, Chicago, IL, Joseph Goldberg, Freedman Boyd & Daniels, Albuquerque, NM, Lynn L. Sarko, Keller Rohrback, Seattle, WA, Jack Weston Hanson, Hanson & Assoc., Minneapolis, MN, Steve W. Berman, Hagens & Berman, Seattle, WA, Thomas J. Potter, Ludens Potter & Burch, Morrison, IL, Pat M. Barrett, Jr., Barrett Law Office, Lexington, MS, Francis O. Scarpulla, Scarpulla Law Office, San Francisco, CA, Vernon N. Reaser, Reaser & Wall, Victoria, TX, Joel C. Meredith, Meredith & Cohen, Philadelphia, PA, Robert N. Kaplan, Kaplan & Kilsheimer, New York City, Charles R. Watkins, Susman Saunders & Buehler, Chicago, IL, Eugene A. Spector, Mark S. Goldman, Paul J. Scarlato, Spector & Roseman, Philadelphia, PA, Eric D. Freed, Freed Law Office, Los Angeles, CA, for Blomkest Fertilizer, Inc.
Lynn L. Sarko, Keller Rohrback, Seattle, WA, Charles R. Watkins, Susman Saunders & Buehler, Chicago, IL, for Hahnaman Albrecht, Inc.
Charles Harley Johnson, Johnson & Assoc., St. Paul, MN, Mark Reinhardt, Reinhardt & Anderson, St. Paul, MN, for John Peterson.
Elliot S. Kaplan, Linda S. Foreman, Lateesa Thamani Agunbiade, Robins Kaplan Miller & Ciresi, Minneapolis, MN, Joseph W. Cotchett, Susan Y. Illston, Mark D. Eibert, John L. Fitzgerald, Cotchett Illston & Pitre, Burlingame, CA, Arthur N. Bailey, Bailey Law Office, Jamestown, NY, Leonard B. Simon, Dennis Stewart, Milberg Weiss Bershad Secthrie & Learach, San Diego, CA, for Laing-Gro Fertilizers, Inc.
Joseph Goldberg, Freedman Boyd & Daniels, Albuquerque, NM, John P. Bailey, Bailey Law Office, Bemidji, MN, James S. Bailey, Jr., Bailey Harring & Peterson, Denver, CO, for Clearbrook A.G. Service, Inc.
James B. Sloan, Pedersen & Houpt, Chicago, IL, William T. Gotfryd, Gotfryd Law Office, Chicago, IL, for Reamford Liquid Fertilizer Inc.
*409 James B. Sloan, Pedersen & Houpt, Chicago, IL, William T. Gotfryd, Gotfryd Law Office, Chicago, IL, Eliot Norman, Thompson & McMullan, Richmond, VA, for Tolley's, Inc., James River Farm Service Inc.
Joseph W. Cotchett, Mark D. Eibert, Cotchett Illston & Pitre, Burlingame, CA, Arthur N. Bailey, Bailey Law Office, Jamestown, NY, for A.G. Network, Inc.
Charles H. Critchlow, Coudert Bros., New York City, Roger B. Harris, Julie Ann Swanson, Altheimer & Gray, Chicago, IL, Douglas E. Rosenthal, Amy L. Bess, Sonnenschein Nath & Rosenthal, Washington, DC, for Kalium Chemicals, Ltd.
Charles H. Critchlow, Coudert Bros., New York City, Douglas E. Rosenthal, Amy L. Bess, Sonnenschein Nath & Rosenthal, Washington, DC, for Kalium Canada, Ltd.
Bradley Grayson Clary, Oppenheimer Wolff & Donnelly, St. Paul, MN, William C. Holmes, Freeborn & Peters, Chicago, IL, for Noranda Minerals Inc.
Carol Alice Peterson, Dorsey & Whitney, Minneapolis, MN, Wayne A. Cross, Erin L. Ringham, Dewey Ballantine, New York City, Mark Crane, Hopkins & Sutter, Chicago, IL, Stephen A. Marshall, Rubin Baum Levin Constant & Friedman, New York City, for Mississippi Chemical Corp.
Carol Alice Peterson, Dorsey & Whitney, Minneapolis, MN, for Eddy Potash, Inc.
Carol Alice Peterson, Dorsey & Whitney, Minneapolis, MN, Wayne A. Cross, New York City, for New Mexico Potash Corp.
Scott Kimrey Goldsmith, Frank Alan Taylor, Popham Haik Schnobrich & Kaufman, Minneapolis, MN, for P.P.G. Canada Ltd., P.P.G. Industries, Inc.

MEMORANDUM OPINION AND ORDER
KYLE, District Judge.

Introduction
Plaintiffs Neve Brothers, Neve Roses, Inc., and JPM Ranches, Inc. (the "Plaintiffs"), commenced this class action litigation, in California Superior Court, against the Defendants, which are entities engaged in mining, distributing, and selling potash; they allege that the Defendants have conspired to fix and stabilize the price of potash ultimately charged to farmers and other end-users in violation of the California Cartwright Act ("Cartwright Act"), Cal.Bus. & Prof.Code §§ 16720, et seq. (Count I), and the California Unfair Competition Act ("Competition Act"), Cal.Bus. & Prof.Code §§ 17200, et seq. (Count II). The Defendants removed this action to federal court. Before the Court is the Plaintiffs' Motion, pursuant to 28 U.S.C. § 1447(c), to Remand.

Background
On March 29, 1994, the Plaintiffs commenced this action in the Superior Court of the State of California, in and for the City and County of San Francisco. On April 28, 1994, the Defendants, pursuant to 28 U.S.C. § 1441, removed the litigation to the United States District Court for the Northern District of California[1] ("California Court"). The Notice of Removal asserted that removal was proper under federal diversity jurisdiction, 28 U.S.C. § 1332(a), and federal supplemental jurisdiction. Id. § 1367(a). See Notice of Removal, ¶¶ 3, 3.a. On April 29, 1994, the Defendants informed the Judicial Panel on Multidistrict Litigation ("MDL Panel") that this action had been removed to federal court; they stated that the case was a "tag along action" to In re Potash Antitrust Litigation ("Potash"), Civ. No. 3-93-197, MDL No. 981, currently pending before the undersigned.[2]
On May 3, 1994, the Plaintiffs filed a motion, pursuant to 28 U.S.C. § 1447(c), to remand this action to state court. On May 9, 1994, the MDL Panel issued an Order conditionally transferring the litigation to this Court as a tag along action to Potash. On May 23, 1994, the Defendants responded to the Plaintiffs' motion to remand, requesting that the California Court defer ruling on the *410 motion until after the MDL Panel had determined whether the litigation would be transferred to this Court. On June 2, 1994, the California Court granted the Defendants' request. On June 30, 1994, the MDL Panel issued an order transferring the litigation to this Court as a tag along action to Potash.[3]
Presently, this action is one of two tag along cases to Potash. The other tag along action, Angela Coleman v. New Mexico Potash, et al. ("Coleman"), Civ. No. 3-93-684, also is a class action alleging violations of the Cartwright Act and Competition Act; it was originally filed in the California Superior Court in and for the City and County of Los Angeles and then removed to the United States District Court for the Central District of California. The plaintiffs in Coleman did not contest removal; in their First Amended Class Action Complaint, they allege that this Court has subject matter jurisdiction under section 1367.[4]
The parties to this action, Coleman, and Potash have taken a keen interest in the outcome of this motion. In addition to the memoranda the Plaintiffs and the Defendants have submitted to the Court, it has received additional memoranda and exhibits: (1) the Potash plaintiffs have submitted a memorandum and exhibit supporting the instant motion and "suggesting" that this Court also lacks subject matter jurisdiction over Coleman (Doc. No. 42); (2) the Coleman plaintiffs have submitted (a) a memorandum supporting jurisdiction (Doc. No. 41), (b) a "reply memorandum" to the Potash plaintiffs' memorandum in support of remand (Doc. No. 46), and (c) a "surreply" to the Plaintiffs' reply memorandum in support of the instant motion (Doc. No. 50). Finally, the Defendants have submitted a "response" to the Potash plaintiffs' memorandum in support of remand and a finding of lack of subject matter jurisdiction in Coleman (Doc. No. 49). At this point, then, the matter has been fully briefed  albeit in way that illustrates how irrelevant the word "brief" is to legal argument.

Discussion

I. Plaintiffs' Motion to Remand

A. Legal Principles Governing Removal
The Plaintiffs seeks to remand this action under 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Where a district court's subject matter jurisdiction is challenged, the party asserting jurisdiction  in this case, the Defendants  has the burden to demonstrate that jurisdiction exists. In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal.
"What is required to invoke federal-court jurisdiction depends on whether it is the plaintiff or the defendant who wants to invoke it." Hurt v. Dow Chem. Co., 963 F.2d 1142, 1144 (8th Cir.1992). A plaintiff can bring an action in federal district court if his claim "arises under" federal law, see 28 U.S.C. § 1331, or if it does not, if he is suing a citizen of a different state for a certain minimum sum of money. See id. § 1332(a). In both of these situations, the district court has "original jurisdiction" over the action.
Defendants, by definition, cannot invoke the federal court's original jurisdiction. Hurt, 963 F.2d at 1144. In certain circumstances, however, a defendant may be able to invoke removal jurisdiction under 28 U.S.C. § 1441(a), which permits a case to be removed *411 if a federal district court would have had original jurisdiction over the action. Although the requirements for original and removal jurisdiction are similar and they both relate to the end of obtaining federal-court jurisdiction, they are not identical. The Defendants assert that this action falls within this Court's original diversity jurisdiction under 28 U.S.C. § 1332(a),[5] and its supplemental jurisdiction under 28 U.S.C. § 1367(a).[6]

B. Analysis of Plaintiffs' Motion to Remand
The instant motion raises a narrow issue of law concerning whether a class action brought under state law and alleging only violations of state law ("diversity class action") can be removed to federal court when the named plaintiffs may satisfy[7] the $50,000 matter in controversy requirement in section 1332(a), but the absent class members do not. If it can, the Defendants properly removed the litigation to this Court; if not, then removal was improper.[8]
The Plaintiffs begin their proof by asserting that none of the named plaintiffs is subject to this Court's diversity jurisdiction because none of them has alleged a claim in which the matter in controversy exceeds $50,000.[9] They contend that their individual claims do not involve an amount in controversy in excess of $50,000, and that the claims of *412 each class member may not be aggregated for purposes of satisfying the $50,000 threshold. The Plaintiffs further contend that this "anti-aggregation" rule extends to attorneys' fees, in that, potential attorneys' fees recoverable under the Cartwright Act may not be wholly attributed to the named plaintiffs in order to bring the matter in controversy to an amount exceeding $50,000. In support of this position, the Plaintiffs cite Goldberg v. CPC Int'l, 678 F.2d 1365, 1367 (9th Cir.), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982).[10]
Even if the named plaintiffs could meet the $50,000 threshold, the Plaintiffs continue, remanding this action would be appropriate because Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), requires that, in diversity class actions, each class member's claims must satisfy the minimum jurisdiction amount to come within the district court's diversity jurisdiction under section 1332. Id. at 301, 94 S.Ct. at 512. The Plaintiffs assert that none of the absent class members satisfies that requirement; thus, Zahn mandates that the litigation be remanded.[11] Finally, the Plaintiffs cite the Court to several decisions from other district courts holding that section 1367 did not legislatively overrule or supersede Zahn in diversity class actions.
The Defendants respond that the enactment of section 1367(a) did, in fact, overrule or supersede the rule in Zahn. They contend that the language of section 1367(a) clearly and unambiguously encompasses diversity class actions and that section 1367(b) clearly enumerates the only exceptions to supplemental jurisdiction in actions based solely on diversity jurisdiction; Rule 23 is not among them. Relying on the Supreme Court's recent decision in City of Chicago v. Environmental Defense Fund ("EDF"), ___ U.S. ___, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994), the Defendants aver that because Rule 23 is not included as one of the exceptions to supplemental jurisdiction enumerated in section 1367(b), diversity class actions brought under Rule 23(b)(3) are not excepted from section 1367(a). See id. at ___, 114 S.Ct. at 1593. In these circumstances, they continue, the plain language of section 1367 expresses Congress' intent that diversity class actions be within the district courts' supplemental jurisdiction, and this Court must enforce the clear language of the statute, notwithstanding countervailing legislative history which purports to add an exception not contained in section 1367(b). See H.R.Rep. No. 101-734, 101st Cong., 2d Sess. 29, 76-77 (1990), reprinted in 1990 U.S.S.C.A.N. 6802, 6875.[12]
*413 The Court has reviewed the arguments and rationales of both the "pro-Zahn" faction  represented by the Plaintiffs  and the "anti-Zahn" faction  represented by the Defendants; at least as it regards diversity class actions, Zahn has retained its viability in the face of section 1367 and warrants granting the Plaintiffs' motion to remand this action to state court in California. This Court concurs with other available decisions in the class action context that "a close look at both the language of [§ 1367] and its legislative history teaches that the new provision does not change the old law in this area at all." Griffin v. Dana Point Condominium Ass'n, 768 F.Supp. 1299, 1301 (N.D.Ill. 1991);[13]see Riverside Transp., Inc. v. Bellsouth Telecomm., Inc., 847 F.Supp. 453, 455-56 (M.D.La.1994); Stoumen v. Public Serv. Mut. Ins. Co., No. Civ. A 94-0233, 1994 WL 111355, at *2 (E.D.Pa. Mar. 30, 1994); LeRoy Cattle Co. v. Fina Oil & Chem. Co., No. Civ. A 93-1286-MLB, 1994 WL 151105, at *13 (D.Kan. Mar. 2, 1994); Benfield v. Mocatta Metals Corp., No. 91 Civ. 8255, 1993 WL 148978, at *4 (S.D.N.Y. May 5, 1993); Hairston v. Home Loan and Inv. Bank, 814 F.Supp. 180, 181 n. 1 (D.Mass.1993); Mayo v. Key Finan. Serv., Inc., 812 F.Supp. 277, 278 (D.Mass.1993); Averdick v. Republic Finan. Serv., Inc., 803 F.Supp. 37, 45-46 (E.D.Ky. 1992); Bradbury v. Robertson-Ceco Corp., No. 92-C-3408, 1992 WL 178648, at *2 (N.D.Ill. July 22, 1992); see also North American Mechanical Serv. Corp. v. Hubert, 859 F.Supp. 1186, 1188 (C.D.Ill.1994) (non-class action); Leung v. Checker Motor Corp., No. 93-C-2704, 1993 WL 515470, at *2 (Dec. 7, 1993) (same).[14]Contra Patterson Enterp. v. Bridgestone/Firestone, Inc., 812 F.Supp. 1152, 1154-55 (D.Kan.1993) (nonclass action); Garza v. National American Ins. Co., 807 F.Supp. 1256, 1258 n. 6 (M.D.La.1992) (non-class action) (same).
In light of the superior numerical strength of the pro-Zahn faction, the Defendants' supposedly new weapon  EDF  cannot prevent their defeat.[15]First, the Court simply does not agree that EDF, in any way, clarified courts' proper use of legislative history in interpreting legislative intent;[16] rather, EDF represents the specific application of an established canon of statutory interpretation  that a court may not look to legislative history to imply an intent contrary to that contained in clear and unambiguous legislation  to a statute that was similar in form to section 1367(b)  both contain enumerated exceptions to a statutory rule.[17]Second, although *414 it never specifically said it, the result in EDF followed from the Supreme Court's conclusion that the amendment at issue, which was (a) part of a "comprehensive" statute and was itself comprised of precisely defined terms which did not encompass the term at issue, see id. at ___, 114 S.Ct. at 1590, and (b) "carefully constructed," id. at ___, 114 S.Ct. at 1592, was clear and unambiguous. See id. at ___, 114 S.Ct. at 1597 (Stevens, J., dissenting) ("[t]he relevant statutory text is not as unambiguous as the Court asserts"). A careful review of section 1367 itself, as well as the decisions cited above, teaches that section 1367 does not have the same character.[18]
In summary, the Court stands with the pro-Zahn faction and concludes that Zahn retains its viability as a rule of subject matter jurisdiction in a diversity class action. Consequently, the claims of each and every member of the plaintiff class must individually satisfy the matter in controversy threshold in section 1332(a). The Defendants concede that not all of the class members do.[19] The Defendants, therefore, have failed to meet their burden of demonstrating that this Court may exercise supplemental jurisdiction over the Plaintiffs' class action claims. Accordingly, the Plaintiffs' motion to remand will be granted.

II. Attorney's Fees
The statute governing remand provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Plaintiffs seek an award of costs, including attorneys' fees, incurred as a result of the removal here. The Court will construe the Plaintiffs' request as a motion, pursuant to 28 U.S.C. § 1447(c), for an award of costs, including attorney's fees.
Given the unsettled nature of this entire area of law, and the lack of clear signposts for determining whether Zahn controls, the Court concludes that an award of costs and attorney's fees under section 1447(c) would be inappropriate. Accordingly, the Plaintiffs' motion will be denied.

Conclusion
Based upon the foregoing, and the records, files, and proceedings herein, including the briefs of counsel, IT IS ORDERED that:
1. the Plaintiffs' Motion to Remand (Doc. Nos. 35, 40) is GRANTED. The Clerk of Court is directed to REMAND this action to the Superior Court of the State of California, in and for City and County of San Francisco  Case No. 959767  400 Vaness Avenue, Room 317 City Hall, San Francisco, California 94102;
2. the Plaintiffs' Motion for an Award of Costs, including Attorney's Fees (Doc. Nos. 35, 40) is DENIED; and
3. plaintiffs in Angela Coleman v. New Mexico Potash, et al. ("Coleman"), Civ. No. 3-93-684, shall, within fourteen (14) days of the date of this Order, submit a memorandum to the Court showing cause why, in light of the determination herein, that action should not be remanded for lack of subject *415 matter jurisdiction in accordance with 28 U.S.C. § 1447(c).[20]
NOTES
[1] Hon. Saundra Brown Armstrong.
[2] On May 2, 1994, the Plaintiffs transmitted a letter to the MDL Panel requesting that it defer action on the Defendants' notice of a tag along action until after the California Court had resolved a soon-to-be-filed motion to remand.
[3] On May 24, 1994, the Plaintiffs filed a notice with the MDL Panel that they were opposing transfer of this action. After the California Court granted the Defendants' request to defer ruling on the motion to remand until the merits of the opposition had been determined, the Plaintiffs immediately dropped their opposition to the conditional transfer.
[4] Nevertheless, it appears to the Court that Coleman is similarly situated to this action, at least as concerns this Court's subject matter jurisdiction over the class claims. Apparently, the Coleman plaintiffs agree. (Coleman Mem., at 1 & n. 1 ("the jurisdictional issues in [this action] and Coleman are identical").) Accordingly, if the Court determines that it lacks subject matter jurisdiction over this action, Coleman likely will be subject to remand under 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").
[5] Section 1332(a) provides: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different states...."

28 U.S.C. § 1332(a).
[6] Judicial Improvements Act of 1990, § 310, Pub.L. No. 101-650, 104 Stat. 5089, 5113 (1990). Section 1367 provides, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if 
(1) the claim raise a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction; or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(a)-(c).
[7] The Plaintiffs contend that they do not satisfy the matter in controversy requirement of § 1332(a). As will be seen infra, that matter need not be decided here.
[8] The Defendants, as well as the plaintiffs in Coleman, assert other arguments supporting removal of all or some of the claims in this case. The Defendants contend that the Plaintiffs' Competition Act claim in Count 2 is a "private attorneys general" action and not, at least "in part," a class claim. (Mem.Opp'n Remand, at 24-28.). Consequently, the Defendants assert, the amount of the matter in controversy must be measured by the value of the relief sought by the Plaintiffs or the cost to the Defendants if the relief sought is granted; this amount easily exceeds $50,000. The Court has carefully considered this argument in light of the Plaintiffs allegations in Count 2 and relevant case law; it does not support removal.

The Coleman plaintiffs contend that this action comes within this Court's "federal question" jurisdiction under 28 U.S.C. § 1331; that is, it "arises under" the law of the United States because "resolution of the claims [in this litigation] requires the application of the federal antitrust statutes." (Coleman Mem., at 2, 10-11.) This argument is unpersuasive.
[9] Plaintiffs also assert that not all of the Defendants are diverse from all of the Plaintiffs because defendant Noranda, Inc. has its "principal place of business" in California. (Mem.Supp.Remand, at 2 n. 4). Under the accepted definition of the term "principal place of business," the Plaintiffs' assertion is misplaced.
[10] It is clear that the court in Goldberg based its decision solely on the "policy" implications of the Supreme Court's decision in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), which will be discussed below. See Goldberg, 678 F.2d at 1367. As a result, if the Plaintiffs do not prevail on their Zahn-related arguments, Goldberg would provide weak authority for their assertion that attorneys' fees should not be attributed to the named plaintiffs.
[11] Plaintiffs also argue that by utilizing the terms "joinder" and "intervention" in the final sentence of § 1367(a), "Congress intended to restrict the exercise of supplemental jurisdiction to those claims where additional parties are either joined or intervene in the litigation pursuant to the applicable federal rules and not to claims prosecuted on behalf of absent class members." (Mem.Supp.Remand, at 14.) The Court disagrees. The inclusion of "joinder" and "intervention" in § 1367(a) merely indicates that whatever jurisdiction is established therein, it exists as to claims brought by the original parties to the litigation and to those entering the case through joinder or intervention of additional parties.
[12] The Defendants buttress their assertion that Congress unequivocally failed to include Rule 23 as an exception in § 1367(b) by citing an article that appeared as part of the academic debate swirling around the creation of § 1367 and its effects on Zahn. See, Thomas D. Rowe, Jr., Stephen B. Burbank and Thomas M. Mengler, Compounding or Creating Confusion about Supplemental Jurisdiction? A Reply to Professor Freer, 40 Emory L.J. 943 (1991). In the article, the authors, all of whom assisted in drafting § 1367, state that "the legislative history was an attempt to correct [Congress'] oversight" in failing to include Rule 23 as an exception to supplemental jurisdiction in § 1367(b). Id. at 960 n. 90.

The Defendants also cite Garza v. National American Ins. Co., 807 F.Supp. 1256 (M.D.La. 1992), and 1 Herbert B. Newberg, Newberg on Class Actions, § 6.11, at 6-48 through 6-49 (1992), as supportive of their position. In Garza, which was not a diversity class action, the court concluded that § 1367 had legislatively overruled Zahn. 807 F.Supp. at 1258 n. 6.
[13] Although Dana Point was not a class action, the court succinctly stated the prevailing view that § 1367 did not affect the rule in Zahn. The remaining decisions cited herein are all class actions.
[14] No circuit court of appeals has yet ruled on the controversy at issue here. The Court notes, however, that in Watson v. Shell Oil Co., 979 F.2d 1014, 1021 (5th Cir.1992), reh'g en banc granted, 990 F.2d 805 (5th Cir.1993), the Fifth Circuit, in passing on an interlocutory appeal from certain class certification orders, stated the rule in Zahn without mentioning the existence of § 1367. In addition, the Third Circuit, in Packard v. Provident Nat'l Bank, 994 F.2d 1039 (3d Cir.), cert. denied sub nom., Upp v. Mellon Bank, N.A., ___ U.S. ___, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993), noted that the question over Zahn's status after § 1367 has "spawned" a serious dispute and cited both decisions  all of which are set forth herein  and scholarly articles representative of the positions taken by the pro-Zahn and anti-Zahn factions.
[15] The Defendants contend that all of the decisions in the pro-Zahn faction were decided prior to EDF and that their holdings thus are no longer persuasive. It is true that EDF was issued after the decisions supporting the pro-Zahn faction; however, for the reasons set forth below, that statement is merely a truism.
[16] Indeed, the court in LeRoy Cattle rejected a substantially identical argument to the Defendants' EDF-based argument. In LeRoy Cattle, the defendant specifically argued that under the Supreme Court's decision in West Virginia Univ. Hosp., Inc. v. Casey, 499 U.S. 83, 98-99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991), and the Tenth Circuit's decision in Edwards v. Valdez, 789 F.2d 1477, 1482 (10th Cir.1986), "legislative history should not be consulted in this case because the language of § 1367 is `plain and unambiguous.'" LeRoy Cattle, 1994 WL 151105, at *14. The court accepted the canon of construction discussed in Casey and Edwards, but concluded that "the meaning and purpose of § 1367, as it applies specifically to class actions, is neither `unambiguous' nor `clear' in the statutory language itself." Id.
[17] In light of the well-established character of this canon, this Court is unwilling to conclude that so many district courts would ignore clear and unambiguous language in a statute and rely on legislative history in an effort to avoid exercising their subject matter jurisdiction.
[18] This Court agrees with the LeRoy Cattle court's well-taken statement that "[i]t is unlikely that so much scholarly effort would have been expended on the meaning and purpose of § 1367 if its meaning and purpose were clear." 1994 WL 151105, at *15, n. 10.
[19] In light of the Court's decision herein, it is unnecessary to resolve the question whether the named plaintiffs in a diversity class action can satisfy the matter in controversy requirement by attributing the potential attorney's fees to themselves. The Court notes, however, that the Defendants themselves tied the strength of the Ninth Circuit's decision in Goldberg v. CPC Int'l, 678 F.2d 1365 (9th Cir.), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), to Zahn; hence, Zahn's continuing vitality passes through to Goldberg and justifies a conclusion that named plaintiffs in a diversity class action cannot satisfy the matter in controversy threshold in § 1332(a) by attributing potential attorney's fees to themselves.
[20] In responding to the Order to Show Cause, the Coleman plaintiffs are to avoid offering arguments that seek, either implicitly or explicitly, to have the Court revisit or reconsider any of the determinations herein. In addition, no response shall be filed to the Coleman plaintiffs' memorandum unless directed by the Court.